ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| LUIS ARNALDO DUEÑO VARGAS<br><br>Recurrido<br><br>v.<br><br>IVELISSE AROYO RODRÍGUEZ<br><br>Peticionaria | KLCE202400344 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm.: KAC2009-0358<br><br>Sobre: División de Comunidad |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

SENTENCIA

En San Juan, Puerto Rico, a 10 de mayo de 2024.

Comparece la parte peticionaria, Sra. Ivelisse Arroyo Rodríguez (Arroyo Rodríguez o peticionaria), mediante un recurso de *certiorari*, y nos solicita que revoquemos la *Resolución* emitida el 15 de diciembre de 2023, notificada el 18 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En el referido dictamen, el foro primario declaró No ha lugar la *Urgente Moción para que se dicte Resolución Sumaria Parcial* presentada por la señora Arroyo Rodríguez; y declaró Ha lugar la *Oposición a Urgente Moción para que se dicte Sentencia Sumaria Parcial* presentada por el Sr. Luis Arnaldo Dueño Vargas (Dueño Vargas o recurrido).

Adelantamos que, luego de considerar los escritos de las partes, así como los documentos que los acompañan y el derecho aplicable, acordamos expedir el recurso de *certiorari* y modificar la *Resolución* del TPI, así modificada confirmamos.

Número Identificador

SEN2024_____

**I.**

El 30 de abril de 2009, el señor Dueño Vargas presentó una *Demanda Enmendada* sobre reconocimiento, división de comunidad de bienes y nombramiento de administrador.[1] En ella alegó que convivió en una relación consensual con la señora Arroyo Rodríguez desde 1983 hasta el 1993. De igual modo, adujo que, desde 1989 hasta mayo del 2003, adquirieron bienes y se constituyeron obligaciones a través de una comunidad de bienes formada por ambos. En lo pertinente, señaló que, en marzo de 1993, estos adquirieron el edificio de nombre Vista Bella localizado en la Avenida Juan Ponce de León # 661 en Miramar, San Juan (Edificio). Según el señor Dueño Vargas, la escritura de compraventa del referido edificio se otorgó únicamente a nombre de la señora Arroyo Rodríguez, con el compromiso de que posteriormente se inscribiera a nombre de ambos. Expresó, además, que por un espacio de cinco (5) años, creó en el Edificio catorce (14) estudios para arrendamiento, habilitó el primer piso para que se convirtiera en la oficina de ambos y el tercer piso para que constituyera la vivienda de las partes. Asimismo, adujo que en el 1997 él y la señora Arroyo Rodríguez adquirieron, a través de una corporación creada por ambos, cuatro (4) propiedades colindantes con el Edificio. A tales efectos, Dueño Vargas arguyó que decidieron dividirse las tareas con el fin de progresar. Así pues, señaló que él se encargaría de la demolición, remodelación, diseño y construcción. Por su parte, la señora Arroyo Rodríguez se haría cargo de la administración de las propiedades como; pagar la hipoteca, pagar las utilidades, los seguros y otros gastos con el dinero que se recibía de la renta de los negocios que operaban.

---

[1] Apéndice de la parte recurrida, págs. 1-7. La Demanda original fue presentada el 6 de abril de 2009.

Además de lo anterior, expresó en la *Demanda Enmendada* que debido a que él y la señora Arroyo Rodríguez no convivían juntos desde 1993, en agosto del 2003 decidió construir con su propio dinero, y con el aval de la señora Arroyo Rodríguez, un cuarto piso en el techo del Edificio para hacerlo su residencia. Asimismo, alegó que el costo de dicha construcción fue superior a los $100,000, de los cuales alegadamente la señora Arroyo Rodríguez no aportó nada. Mencionó, también, que en el 2006, con el aval de la señora Arroyo Rodríguez decidió ampliar y remodelar la oficina del primer piso donde se llevaban a cabo negocios. La remodelación tuvo un costo de $80,000. Sin embargo, puntualizó que lleva años solicitándole a la señora Arroyo Rodríguez que el Edificio sea inscrito a nombre de ambos, empero, esta no ha realizado dicha gestión. Por tanto, le solicitó no continuar como comunero y dividir los bienes. Además, dicha solicitud se reiteró posteriormente ante el incumplido de la señora Arroyo Rodríguez con las obligaciones administrativas. Así pues, con la *Demanda* instada en el TPI, el señor Dueño Vargas solicitó que: se reconozca que tiene participación en el Edificio; se otorgue escritura pública donde se le reconozca su participación del 50% en el Edificio; se le reconozcan créditos sobre pagos a hipoteca y la construcción del cuarto piso del edificio; se le ordene el cese y desista de la administración a la señora Arroyo Rodríguez y que esta rinda informes y; se nombre un administrador.

El 30 de junio de 2009, la señora Arroyo Rodríguez presentó su *Contestación a Demanda Emendada.*[2] Mediante esta, negó parte de las alegaciones en su contra y levantó sus defensas afirmativas. En lo pertinente, negó que el señor Dueño Vargas haya creado exclusivamente los catorce (14) apartamentos del Edificio. Además, negó que haya dado permiso para la construcción de un cuarto

---

[2] Apéndice de la parte recurrida, págs. 8-10.

piso y la remodelación de la oficina del primer piso. Por otro lado, de las alegaciones aceptadas por la señora Arroyo Rodríguez, surge que esta aceptó que había una relación consensual entre ella y el señor Dueño Vargas, que para el año 1983 se había creado una comunidad de bienes y que entre los bienes pertenecientes a la comunidad se encontraba el Edificio. También, entre otras cosas, afirmó que existían créditos a su favor y que el señor Dueño Vargas ha utilizado bienes de la comunidad sin su autorización y sin el correspondiente pago a esta.

Además, la señora Arroyo Rodríguez presentó una *Reconvención* donde solicitó la liquidación de la comunidad. Asimismo, sostuvo que existen créditos a su favor que debían ser objeto de pago por parte del señor Dueño Vargas.

Surge del expediente que el 24 de agosto de 2009, el señor Dueño Vargas replicó la *Reconvención* presentada por la señora Arroyo Rodríguez.[3] Mediante esta, aceptó que existió una comunidad de bienes, sin embargo, negó que haya durado hasta la presentación de la reclamación judicial. Es decir, que esta duró hasta el 2003 cuando le comunicó a la señora Arroyo Rodríguez su intención de no continuar más en la comunidad de bienes. De igual modo, negó que existieran créditos a favor de la señora Arroyo Rodríguez y que se hayan realizado gestiones sobre los bienes de la comunidad sin la autorización de esta.

Así las cosas, el 14 de noviembre de 2011, las partes sometieron sus estipulaciones.[4] De este modo, estipularon en lo pertinente que: sostuvieron una relación concubinaria desde el 1983 hasta el 1993; que existe un edificio llamado Vista Bella localizado en la Ave. Juan Ponce de León #661 en Miramar, San Juan, Puerto Rico; que las contribuciones de dicha propiedad se

---

[3] Apéndice de la parte peticionaria, Anejo 1, págs. 1-17.
[4] Apéndice de la parte peticionaria, Anejo 4, págs. 1-3.

pagan conjuntamente con la hipoteca; que la compraventa del Edificio se otorgó mediante Escritura Núm. 15, otorgada el 19 de enero del 1993 ante el notario Daniel Pernas Beceiro, por la suma de $285,000; que la compareciente como compradora es la señora Arroyo Rodríguez; que el 19 de enero de 1993 también se otorgó la Escritura Núm. 5 de Hipoteca por la suma de $228,000, ante el notario Francisco J. Silva Salcedo.

Por otro lado, el 28 de noviembre de 2011, el TPI ordenó al señor Dueño Vargas incluir en el pleito las corporaciones pertenecientes a la comunidad por ser partes indispensables.[5] En cumplimiento con la referida orden, el 14 de diciembre de 2011 el señor Dueño Vargas enmendó nuevamente la demanda a los fines de incluir las corporaciones y reiteró sus reclamos originales.[6] De otra parte, el 30 de abril de 2012, la señora Arroyo Rodríguez presentó su *Contestación a Demanda Emendada* y en esta ocasión negó que existiera una comunidad entre las partes en cuanto a los bienes que están a su nombre.[7]

Luego de varios trámites procesales, el 14 de noviembre de 2016, la señora Arroyo Rodríguez presentó una *Urgente Moción para que se dicte Resolución Sumaria Parcial*.[8] Por medio de esta, planteó que procedía disponer del caso sumariamente, toda vez que no existía controversia sobre: que el Edificio estaba inscrito a nombre de ella; que el señor Dueño Vargas llevó a cabo una construcción en el techo del Edificio para hacerla su residencia, la cual fue para beneficio exclusivo de este; que la construcción se llevó a cabo sin los permisos requeridos por las agencias pertinentes, por lo que la hacía ilegal; que el señor Dueño Vargas nunca pagó renta ni servicio de agua y energía eléctrica; y que la remodelación del primer piso solo se hizo en beneficio de él. Entre

---

[5] Apéndice de la parte recurrida, págs. 11-13.
[6] Apéndice de la parte recurrida, págs. 14-20.
[7] Apéndice de la parte peticionaria, Anejo 8, págs. 1-8.
[8] Apéndice de la parte peticionaria, Anejo 6, págs. 1-7.

los documentos que se acompañaron con la referida moción se encuentra la Escritura de Compraventa Núm. 15 del Edificio, autorizada el 19 de enero de 1993 por el notario Daniel Pernas Beceiro.[9]

Por su parte, el 8 de diciembre de 2016, el señor Dueño Vargas se opuso a la moción de sentencia sumaria con su *Oposición a Urgente Moción para que se dicte Sentencia Sumaria.*[10] El señor Dueño Vargas señaló que existían controversias que debían ser dilucidadas en un juicio plenario y no mediante sentencia sumaria. De este modo, puntualizó que el TPI no podía resolver sumariamente las solicitudes de crédito que presentó en el pleito. En cuanto a la ilegalidad de las construcciones del Edificio, señaló que era de la competencia de OGPe resolver la misma y no a los tribunales. Asimismo, arguyó que construyó el cuarto piso del Edificio con el consentimiento de la señora Arroyo Rodríguez y que esta no aportó económicamente para dicha construcción. Asimismo, argumentó que la remodelación del primer piso fue consentida por la señora Arroyo Rodríguez y que esta se benefició de la misma puesto que su oficina de corredora de bienes raíces está localizada en ese nivel del Edificio.

Luego de varios incidentes procesales, el 8 de julio de 2019, el TPI dictó *Sentencia* donde atendió la liquidación, adjudicación y participación de las partes en la comunidad de bienes.[11] En lo pertinente, el foro primario señaló que dictaría sentencia sobre lo relacionado al Edificio. Asimismo, en las determinaciones de hechos, el TPI estableció **que la señora Arroyo Rodríguez era la única titular del Edificio en el Registro de la Propiedad**. No obstante, el foro primario concluyó, entre otras cosas, que **existió una comunidad de bienes compuesta por el señor Dueño**

---

[9] Apéndice de la parte peticionaria, Anejo 6, págs. 8-17.
[10] Apéndice de la parte peticionaria, Anejo 7, págs. 1-16.
[11] Apéndice de la parte recurrida, págs. 49-56.

**Vargas y la señora Arroyo Rodríguez, y que el Edificio pertenecía a dicha comunidad**.

El 9 de diciembre de 2020, las partes acudieron ante este Tribunal intermedio imputándole al TPI, entre otros errores, haber incido "al liquidar y adjudicar participación a la comunidad de manera sumaria, sin haber celebrado el juicio, **a pesar de existir controversia en cuanto a los bienes que componen la comunidad**, la participación y los créditos, si alguno, de cada parte en el pleito."[12] Así pues, este foro intermedio concluyó, entre otras cosas, que **existía controversia en cuanto a qué propiedades formaban parte de la comunidad de bienes, en particular sobre el Edificio**. No obstante, desestimamos el caso por el fundamento de cosa juzgada, otra controversia que había sido planteada ante nos en aquel momento.

Posteriormente, las partes acudieron ante el Tribunal Supremo donde se atendió la controversia sobre cosa juzgada. Sin embargo, la alta curia le dio la razón a este Tribunal intermedio, a los efectos de que existía controversia sobre los bienes pertenecientes a la comunidad. Expresó nuestro más alto foro que:

> Ahora bien, aunque el Tribunal de Apelaciones erró al desestimar la causa de acción del peticionario bajo el fundamento de cosa juzgada, **existe una determinación en su *Sentencia* que nos parece acertada y que, por tanto, se debe sostener. El foro intermedio concluyó que el foro primario no debió dictar sentencia sumaria, pues había controversias esenciales que impedían así hacerlo. Específicamente, destacó que el propio Tribunal de Primera Instancia reconoció que existía controversia en cuanto a qué propiedades formaban parte del haber común-en particular el Edificio Vista Bella #661**-; qué participación sobre los bienes de la comunidad le correspondía a cada parte; y si existían créditos [a] favor de una o la otra. Según hemos mencionado, no procede una sentencia sumaria si existen hechos esenciales y pertinentes en controversia. **Por tal razón, coincidimos con el foro apelativo intermedio en cuando a que procedía que las partes tuviesen la oportunidad de presentar prueba para aclarar los bienes que son partes del**

---

[12] *Dueño Vargas v Arroyo Rodríguez*, KLAN201901019.

**haber común**, así como sus respectivas participaciones y créditos sobre esas propiedades.[13] (Énfasis nuestro).

Así las cosas, el 15 de diciembre de 2023, el foro primario dictó *Resolución*, notificada el 18 de diciembre de 2023.[14] En la referida *Resolución*, el TPI atendió la moción de sentencia sumaria presentada el 14 de noviembre de 2016, y determinó que no había controversia sustancial sobre los siguientes hechos:

1. El Edificio Vista Bella 661 ubicado en la Avenida Ponce de León 661, Miramar, San Juan, Puerto Rico (en adelante "Edificio Vista Bella 661"), consta inscrito en el Registro de la Propiedad de San Juan, Sección I, Folio 221 del tomo 860 de Santurce Norte, finca número 5,886.

2. **El Edificio Vista Bella 661 consta inscrito a favor de Arroyo Rodríguez, quien adquiere por compra que hiciera a Francisco Baquero Rodríguez y su esposa Vanessa Olivencia Jiménez, según consta de la Escritura de Compraventa, la Escritura número 15, otorgada en San Juan el día 19 de enero de 1993 ante el notario público Daniel Pernas Beceiro**.

3. El Edificio Vista Bella 661 consta de tres pisos y una azotea. En el primer piso ubican las oficinas de administración del edificio y de corredora de bienes raíces de Arroyo Rodríguez, la oficina legal de Dueño Vargas y siete estudios que se dedican a alquiler. En el segundo piso hay siete estudios que se dedican a alquiler. En el tercer piso ubica la residencia de Arroyo Rodríguez y en la azotea ubica la residencia de Dueño Vargas.

4. Dueño Vargas llevó a cabo una construcción en el techo del Edificio Vista Bella 661 para hacerlo su residencia.

5. Esa construcción de su residencia fue para el beneficio exclusivo de Dueño Vargas, en donde Arroyo Rodríguez nunca habitó.

6. Esa construcción se hizo sin los permisos necesarios, sin permiso del Municipio de San Juan o de ARPE.

7. Dueño Vargas nunca ha pagado alquiler ni renta por ocupar la estructura que construyó y ocupa en el techo del Edificio Vista Bella 661.

8. Dueño Vargas nunca ha pagado por el consumo de luz o agua en la estructura que construyó y ocupa en el techo del Edificio Vista Bella 661.

9. Dueño Vargas pagó sólo la construcción del cuarto piso.

10. Dueño Vargas pagó sólo la remodelación correspondiente al primer piso.

11. Dueño Vargas admite que la remodelación por la cual reclama un crédito fue una decisión de

---

[13] *Dueño Vargas v Arroyo Rodriguez*, CC-2021-0211.
[14] Apéndice de la parte peticionaria, Anejo 1, pág. 1-17.

ampliar y remodelar la oficina, "por el hecho de la necesidad de poder acomodar a sus clientes que acudían a su oficina por el hecho de su práctica legal en partición de herencias."

12.    La remodelación en el primer piso se hizo en el beneficio de Dueño Arroyo para tener una práctica de abogado presentable.

En consecuencia, el foro primario declaró No Ha Lugar la *Urgente Moción para que se dicte Resolución Sumaria Parcial* presentada por la señora Arroyo Rodríguez, y declaró Ha Lugar la *Oposición a Urgente Moción para que se dicte Sentencia Sumaria Parcial* presentada por el señor Dueño Vargas. El TPI concluyó que había controversia en cuanto a los montos de los dos créditos solicitados por el señor Dueño Vargas sobre la construcción del cuarto piso y la remodelación del primer piso del Edifico. Por otra parte, el TPI determinó que no había controversia sobre que el Edificio formara parte de la comunidad, ya que así lo admitió la señora Arroyo Rodríguez en su *Contestación a la Demanda.*

El 26 de diciembre de 2023, la señora Arroyo Rodríguez presentó una *Moción de Reconsideración,* a la cual se opuso el señor Dueño Vargas. Sin embargo, el foro primario se sostuvo en su determinación y denegó la *Reconsideración.*[15]

Inconforme, la señora Arroyo Rodríguez instó el recurso de *certiorari* el 25 de marzo de 2023 y esbozó el siguiente señalamiento de error:

> Erró el Tribunal Superior al hacer una determinación de titularidad sobre el edificio vista Bella 661 pues era impertinente e inconsecuente a la controversia planteada, constituye una determinación de hecho sustancial no susceptible a ser resuelto sumariamente y excede lo solicitado en la solicitud de sentencia sumaria, violentando así el debido proceso de ley y el derecho de las partes a presentar prueba sobre la referida determinación.

El 17 de abril de 2024, el señor Dueño Vargas presentó su posición. Contando con la comparecencia de ambas partes, procedemos a resolver.

---

[15] Apéndice de la parte peticionaria, Anejo 1, págs. 1-17.

## II.

**El auto de *certiorari***

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por este. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra*.

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro

intermedio tiene autoridad para atender los recursos de *certiorari*.

En su parte pertinente, la norma dispone como sigue:

.    .    .    .    .    .    .    .

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

.    .    .    .    .    .    .    .

La regla procesal fija taxativamente los asuntos aptos para nuestra revisión interlocutoria mediante el recurso de *certiorari*, así como aquellas materias que, por excepción, ameritan nuestra intervención adelantada, ya fuese por su naturaleza o por el efecto producido a las partes. *800 Ponce de León v. AIG, supra*, pág. 175.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma reiterada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**La Sentencia Sumaria**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. **Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia**

**de hechos medulares, de modo que lo restante sea aplicar el derecho**. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario." *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.1 de Procedimiento Civil dispone que la parte reclamante podrá presentar "moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada." 32 LPRA Ap. V, R. 36.1. Por otro lado, Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2.

Igualmente, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece los requisitos que debe contener la solicitud de sentencia sumaria y su contestación. En cuanto a la

contestación, la parte promovida "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". *Id.* Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas, supra,* pág. 111. En caso de que el promovido sea quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

Ahora bien, la sentencia sumaria solo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot, supra,* pág. 699 y los casos allí citados. Por ser este un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González et al. v. M. Cuebas, supra,* págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado,* 186 DPR 113 (2012). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo

necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133.

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Esto es, no estamos compelidos a adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335. El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil, *supra. Id*. Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos

materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.*, pág. 119.

En resumen, al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y en la oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo, supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria si: (1) existen hechos materiales controvertidos; (2) hay alegaciones en la demanda que no han sido refutadas; (3) surge de los documentos que se acompañan con la moción una controversia real sobre algún hecho esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

**El Concubinato**

Se conoce como concubinato a la unión voluntaria entre dos personas que no han contraído matrimonio y que han convivido públicamente por un tiempo relativamente largo. R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, Universidad Interamericana de Puerto Rico Facultad de Derecho, Vol II, pág. 822. El concubinato se considera similar al matrimonio por cumplir, entre otros, con los siguientes elementos: (1) la cohabitación (comunidad de vida y lecho); (2) la publicidad o

notoriedad; (3) la estabilidad o la permanencia, y (4) la fidelidad. *González Rivera v. Robles Laracuente*, 203 DPR 645, 658 (2019); Véase además C.R. Padilla Montalvo*, El matrimonio no formalizado en Puerto Rico*, 38 Rev. Der. Pur. 355, 363 (1999). Ahora bien, en una unión entre concubinos no se genera una Sociedad Legal de Gananciales, ya que esta solo se crea mediante el matrimonio. *Torres Vélez v. Soto Hernández*, 189 DPR 972, 990 (2013). En ese sentido, no se genera automáticamente, un interés común en los bienes que adquieren los concubinos. *Torres v. Roldán*, 67 DPR 367, 368 (1947).

El régimen económico que rige el concubinato es la comunidad de bienes. Serrano Geyls, *op. cit.*, pág. 855. El Tribunal Supremo ha reconocido "el interés propietario de los concubinos con respecto a los bienes adquiridos o que hayan incrementado de valor vigente la relación, como resultado del esfuerzo, labor y trabajo aportados conjuntamente bajo cualquiera de las siguientes alternativas: '(1) como pacto expreso ... (2) como pacto implícito que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato ... (3) como un acto justiciero para evitar el enriquecimiento injusto ...'". *Ortiz de Jesús v. Vázquez Cotto,* 119 DPR 547, 548-549 (1987); *Domínguez Maldonado v. E.L.A.*, 137 DPR 954, 967 (1995). Asimismo, el concubino que alegue que se ha constituido una comunidad de bienes, debe presentar prueba al respecto. *Id.*; *Torres Vélez v. Soto Hernández*, *supra*, pág. 990. Ahora bien, el concubino que no logre probar el pacto expreso o implícito, es decir, que no pruebe la existencia de la comunidad de bienes, podría probar que aportó bienes, valores y servicios, que estos produjeron ganancias; de tal modo que se evite el enriquecimiento injusto de la otra parte. *Caraballo Ramírez v. Acosta,* 104 DPR 474,

481 (1975). Por tanto, podrá reclamar el valor de dichos bienes, valores y servicios y sus correspondientes ganancias. *Id.*, pág. 482.

**Enmienda a las alegaciones**

La Regla 13.1 de Procedimiento Civil, 32 LPRA App. V, R. 13.1, dispone que:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene.

Nuestro más alto foro ha señalado que la autorización para enmendar las alegaciones al amparo de la Regla 13.1 debe concederse de forma liberal. Regla 13.1 de Procedimiento Civil, *supra*; *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 334 (2010). Además, **existe una clara política pública de que los casos se ventilen en sus méritos, por lo que las Reglas de Procedimiento Civil favorecen la autorización de las enmiendas a las alegaciones**. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012); J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. J.T.S., 2011, T. II, pág. 592. Así pues, los tribunales poseen amplia discreción para decidir si permiten la enmienda a una alegación, incluso en etapas adelantadas de los procedimientos. *Colón Rivera v. Wyeth Pharm*, *supra.*

Sin embargo, a pesar de la liberalidad que permea en las Reglas de Procedimiento Civil para la autorización de enmiendas a las alegaciones, esta no es infinita. *S.L.G. Font Bardón v. Mini-Warehouse, supra; Romero v. S.L.G. Reyes*, 164 DPR 721, 730 (2005). El Tribunal Supremo ha establecido cuatro (4) elementos que deben considerarse al momento de decidir si se autoriza una enmienda, a saber: "(1) el impacto del tiempo trascurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada". *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 748 (2005). Asimismo, estos cuatro (4) factores deben considerarse conjuntamente. *S.L.G. Font Bardón v. Mini-Warehouse, supra,* pág. 335*; Colón Rivera v. Wyeth Pharm., supra.*

**Efectos de no negar las alegaciones**

Las alegaciones son los escritos que presentan al tribunal los hechos que dan base a las reclamaciones o defensas de una parte. R. Hernández Colón, *Derecho procesal civil,* 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 283. Asimismo, la Regla 5.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 5.1, establece que "las alegaciones permitidas serán la demanda, la reconvención, la demanda contra coparte, la demanda contra tercero y sus respectivas contestaciones."

Por su parte, la Regla 6.2 de Procedimiento Civil, 32 LPRA App. V, R. 6.2, dispone que ¨[l]a parte a quien corresponda presentar una alegación responsiva admitirá o negará las aseveraciones en que descanse la parte contraria y expondrá sus defensas contra cada reclamación interpuesta, junto con una relación de los hechos demostrativos de que le asisten tales defensas." A tales efectos, la Regla 6.4 de Procedimiento Civil, 32 LPRA App. V, R. 6.4, menciona que ¨[l]as aseveraciones contenidas en cualquier alegación que requiera una alegación responsiva y

que no se refieran al monto de los daños, se considerarán admitidas si no fueron negadas en la alegación responsiva." Véase además *Conde Cruz v. Resto Rodriguez et al.*, 205 DPR 1043, 1063 (2020). Así pues, el Tribunal Supremo ha establecido que las admisiones del demandado relevan al demandante de tener que probar los hechos así admitidos. *Diaz Ayala et al. v. E. L. A.*, 153 DPR 675, 692 (2001). Es decir, el demandante no tendrá que presentar prueba sobre hechos no negados, o admitidos, en la contestación, por lo que deben considerarse como ciertos. *Id.*

**III.**

En el presente caso, la señora Arroyo Rodríguez señala, como único error, que incidió el TPI al hacer una determinación de titularidad sobre el Edificio, la cual alegadamente constituye una determinación de hecho sustancial no susceptible a ser resuelto sumariamente.

Según la determinación del TPI, el Edificio pertenece a la comunidad de bienes ya que así fue admitido por la señora Arroyo Rodríguez en su *Contestación a Demanda Enmendada*. Por su parte, la señora Arroyo Rodríguez argumenta que la determinación del TPI, sobre la titularidad del Edificio, excedió la controversia solicitada en la moción de sentencia sumaria. Asimismo, planteó que la titularidad del Edificio era un hecho medular del caso no susceptible de ser resuelto mediante sentencia sumaria debido a que violentaba el debido proceso de ley y es contrario a Derecho y a la *Sentencia* dictada por el Tribunal Supremo en el caso CC-2021-0211, **la cual establece que existe controversia sobre la titularidad de este**. De otra parte, el señor Dueño Vargas expresó que no erró el TPI al resolver la titularidad del Edificio, toda vez que la señora Arroyo Rodríguez había admitido en su *Contestación a Demanda Enmendada* que este pertenecía a la comunidad de

bienes y que así lo había resuelto el foro primario en varias ocasiones.

Como cuestión de umbral precisa advertir que la determinación recurrida es un asunto comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1 de las de Procedimiento Civil, *supra*, al constituir un dictamen resolutorio de una moción de carácter dispositivo. Asimismo, a la luz de las disposiciones de la Regla 40 de nuestro Reglamento, *supra*, entendemos que están presentes algunos de los criterios allí dispuestos para que proceda nuestra intervención con la misma.

Luego de expedido el *certiorari* y examinada de *novo* la *Urgente Moción para que se dicte Resolución Sumaria Parcial* y su *Oposición a urgente Moción para que se dicte Sentencia Sumaria Parcial*, concluimos que procede modificar la *Resolución* del TPI a los efectos de que existe controversia sobre la titularidad del Edificio como ya resolvió nuestro Tribunal Supremo. Veamos.

Como bien reseñamos anteriormente, procede que el tribunal disponga del caso sumariamente cuando **no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho.** *Pérez Vargas v. Office Depot, supra.* Surge del expediente del caso ante nuestra consideración que las partes estipularon que sostuvieron una relación concubinaria desde el 1983 hasta el 1993.[16] Por tanto, no está en controversia la existencia de la relación concubinaria entre el señor Dueño Vargas y la señora Arroyo Rodríguez. Además, no está en controversia la existencia de la comunidad de bienes.

No obstante, como bien determinó el TPI en su dictamen, existe controversia de hecho en cuanto al monto de los créditos en concepto de construcción del cuarto piso del Edificio y la remodelación del primero. Sobre esto, el señor Dueño Vargas y la

---

[16] Apéndice de la parte peticionaria, Anejo 4, pág. 1.

señora Arroyo Rodríguez no levantaron ningún error ante nuestra consideración. Ahora bien, en cuanto a la controversia sobre la titularidad del Edifico, cabe señalar que aunque la señora Arroyo Rodríguez admitió en su *Contestación a Demanda Enmendada* que dicho bien pertenecía a la comunidad, posteriormente lo negó. Asimismo, la señora Arroyo Rodríguez presentó en evidencia la Escritura de Compraventa Núm. 15 del Edificio, autorizada el 19 de enero de 1993 por el notario Daniel Pernas Beceiro, donde esta comparece como única compradora del Edificio.[17] Además, resaltamos que ya nuestro más alto foro había determinado que se debía sostener el dictamen de este Tribunal intermedio sobre la existía de controversia en cuanto a la titularidad del Edificio constituyendo esto la ley del caso.[18]

En conclusión, como ya determinó previamente nuestro Tribunal Supremo, sostenemos que existe controversia sobre la titularidad del edificio de nombre Vista Bella localizado en la Avenida Juan Ponce de León #661 en Miramar, San Juan. Por tanto, procede que se dilucide la titularidad de este en un juicio plenario. Nuestra determinación es cónsona con la política pública de que los casos se ventilen en sus méritos.

**IV.**

Por los fundamentos expuestos, expedimos el auto de *certiorari* solicitado y modificamos la *Resolución* recurrida respecto a la titularidad del Edificio, y así modificada se confirma.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[17] Apéndice de la parte peticionaria, Anejo 6, pág. 8-17.
[18] Véase *Dueño Vargas v. Arroyo Rodríguez*, KLAN201901019 y CC-2021-0211. Además, véase: *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200-201 (2020); *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 67 (2019).